McKinney, J.,
delivered the opinion of the Court.
This action was brought to recover damages for the alleged breach of a covenant of seizin in a deed. Judgment was for the defendant in the Circuit Court, and an appeal in error to this Court.
It appears, that on the 17th of July, 1851, the defendant, Brittain, by a deed of bargain and' sale, conveyed to the plaintiff a lot -of ground, in the town .of Shelbyville, and therein covenanted, amongst other things, that he was “ lawfully seized of and had a good right to convey” the same.
The proof shows, that at the 'time of the conveyance, the bargainor was seized of only an undivided interest in said lot, with the other heirs at law of his grandfather, Joseph Brittain, from whom the title was derived by descent, and that his interest, as a tenant in common of said lot, was but one-seventh part.
*121 Previous to the sale to the , plaintiff, said lot had lain in the commons of the town, unenclosed; and the defendant had not actual possession of it at the time of sale. After the purchase, the plaintiff enclosed the lot and still remains in the undisturbed possession of the same.
The proof further establishes, that the plaintiff was fully informed of the true state of the title to said lot, and made the purchase with full knowledge of the limited extent of defendant’s interest.
Two grounds of defense are assumed. The first, is grounded upon the import of the term “seizin.” It is argued, that a covenant, that the bargainor “ is lawfully seized,” implies merely a seizin in deed, and not a seizin in law; that it does not exact a good title, but is fulfilled by the transfer to the purchaser of an actual sei-zin, no matter though it be tortious.
Such a doctrine seems to have been sanctioned in Massachusetts, and some three or four of the other States. It appears to have been first casually announced by Chief Justice Parsons, in the case of Marston vs. Hobbs, 2, Mass. R., 439. But it is in direct opposition to the English doctrine, and seems not to have been generally adopted in the United States.
In the Courts of most of the States, where the question has arisen, the covenant for seizin has been regarded as a covenant for title, the word being used as synonymous with right. In the common law authorities, this covenant has been defined to be “an assurance to the purchaser, that the grantor has the very estate, in quantity and quality, which he purports to convey.” 11 East, 641. And no case, it is said, can be found in *122 the English hooks, in which less than an exact compliance with this definition, has been held sufficient to prevent its breach. Rawle on Covenants, ch. 2, p. 52 The opposite doctrine, of so recent origin, cannot be maintained. To hold that a covenant for lawful seizin is answered by a seizin in fact, where there is no sei zin in law, is against the plain import of the words, as well as the obvious intention of the parties. The covenant would seem to be susceptible of but one construction, and that is,. that the bargainer has not only a seizin in deed, so that the possession may be delivered without violation of the Champerty act, but that he has likewise, seizin in law, or such a legal interest as will pass to the purchaser the quantity and quality of interest in the estate which he purports to sell or convey. It would seem to be nothing short of down-right absurdity to say, that a “lawful seizin” means nothing more than an actual seizin, however tortious it may be; or that the covenant is satisfied by transmitting to the purchaser such a seizin as, while it j>uts him into the actual possession, constitutes him a trespasser by the very act of entering under his deed, and subjects him to an immediate action and eviction, by the rightful owner. Such a construction makes the covenant nugatory; for the want of present actual possession, is a matter open to immediate observation and inquiry by the party, and is not a defect against which the purchaser would be careful to protect himself by covenant.
And, again, if such covenant be fully satisfied by a seizin in fact, though it were by wrong, it must necessarily follow, that the eviction of the purchaser by the proper owner, would give him no right whatever under *123 the covenant, for, according to this doctrine, the sole purpose of the covenant is accomplished by the transfer of the actual seizin to the purchaser.
The cases maintaining this doctrine, do not agree as to the reasons in which it originated. In some of the cases it seems to he understood as in some measure, having grown out of the supposed hardship, of permitting the purchaser to recover back the consideration money, while he is still holding a possession that may, by lapse of time, ripen into a perfect title. In other cases the reason of the rule would seem to be referable to the doctrine of adverse possession, as connected with the statutes against Champerty. And, in this view, the covenant for seizin is treated as merely an assurance to the purchaser, that there existed no such adverse possession as would expose him to the consequences of Champerty. These reasons, we think, are alike unsatisfactory, and insufficient to support the doctrine.
The covenant for seizin, is one of great practical importance. If untrue, it is broken the instant it ip made and an immediate right of action accrues to the purchaser to sue for the breach; and he is entitled to recover damages, the measure of which may be, the consideration money and interest, or a less amount, or even nominal damages,' according to the nature and extent of the breach in the particular case. .
■ If the failure of title be only as to part of the land, or if the purchaser has himself extinguished the paramount title; or if his actual possession has been of such a character, and continued for such a length of time, as to make the title valid under the statute of limitations; or if, for other cause, the breach be merely a tech *124 nical one, the purchaser "will not he entitled to have the damages measured by the consideration money and interest. Such is the proper measure of damages, only where there is an entire failure of title, or where the purchaser has an election to treat it as such. And in the latter case, the effect of a recovery of an equivalent in damages, would he to entitle the bargainor to a re-conveyance; and this, if refused, a Court of Equity would enforce, and perhaps the effect of such recovery of damages would be, by operation of law, to revest the title in the bargainor without more. Ibid. 100 to 105.
The-legal effect of the covenants of warranty, and for quiet enjoyment, is very different from that of the covenant for seizin. The former are regarded as assurances to the purchaser of a permanent, undisturbed possession of the premises conveyed, and therefore, are only broken by his eviction, actual or constructive, until when the purchaser can have no remedy, but must await, at whatever hazard of ultimate loss, the event of his involuntary disseizin by the paramount title, before he can be heard to allege a breach of either covenant. See R^wle on Covenants, ch. 2 and 7, for the general principles before stated.
The second ground, of defense is, that the plaintiff having had full knowledge of the defect in the title, at the time of receiving the deed, is thereby precluded from alleging, as a breach of the covenant of seizin, such defect of title, or from maintaining an action on that ground.
Upon the state of the pleadings in this case, this question perhaps, does not properly arise. The only issue in the case, is on the plea, in general terms, of “ cove *125 nants performed.” In the action of covenant, there is no general issue or plea, -which amounts to a traverse of the whole declaration, and puts the plaintiff upon proof of every material allegation, consequently every matter of defense must he specially pleaded, and the evidence is strictly confined to the particular issue raised hy the plea. 1 Ch. PL, 486, 518; 2, Grreenl. Ev., see 288.
Under the plea of covenants performed, it is clear, that proof of matter in avoidance of the deed, offered for the purpose of establishing that the covenant for seizin, the alleged breach of which constitutes the gravamen of the action, was a nulity, is altogether inadmissible. But we are not prepared to admit that this matter, in any form of pleading, could be set up as a defense to the action. For some purpose, it would unquestionably he allowable to show that the purchaser, at the time of taking the conveyance, had knowledge of the true state of the title. In such a case, it is clear that a Court of Equity would not, other equities aside, lend its aid to such a purchaser, either to enforce or rescind the contract, but would leave him to. his remedy at law. And possibly, in one aspect of the Champerty law, it might he material to inquire, as to the purchaser’s knowledge of the facts respecting, the title. But in an action on the deed, in the legal forum, could the bargainor be heard to allege, that the covenant was false, and that he was entitled to be discharged from its obligation, because its falsehood was known to the purchaser at the time it was made ? Would he not be estopped to do so ? But, as in our view, the question does not properly arise upon this record, we need not pursue the inquiry further.
*126 The result is, that in our opinion, the judgment is erroneous, and it will he reversed, and the case remanded for a new trial.